IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARCUS BRADFORD,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-22-372-JAR
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )

## OPINION AND ORDER

Plaintiff Marcus Bradford (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act.  Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED.**

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was

---

[1]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 21 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning January 9, 2001 due to limitations resulting from ADHD,

3

depression and insomnia.

## Procedural History

On January 25, 2021, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 28, 2022, Administrative Law Judge ("ALJ") Dennis LeBlanc conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On May 31, 2022, the ALJ issued an unfavorable decision. On October 27, 2022, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform work at all exertional levels.

## Error Alleged for Review

Claimant asserts the ALJ erred in evaluating the consistency

of Claimant's statements and the administrative record.

## Evaluation of Claimant's Statements

In his decision, the ALJ determined Claimant suffered from the severe impairments of obstructive sleep apnea, attention deficit hyperactivity disorder, and depression. (Tr. 18). The ALJ found none of Claimant's conditions met a listing. (Tr. 18-19). As a result of the limitations caused by his severe impairments, Claimant was found to retain the residual functional capacity to perform a full range of work at all exertional levels. (Tr. 19). The ALJ did find that Claimant had the non-exertional limitations of no climbing ladders, ropes, or scaffolds, avoiding hazards such as unprotected heights and dangerous moving machinery, and understanding, remembering, and carrying out simple instructions, with no contact with the public. (Tr. 19-20).

After consultation with a vocational expert, the ALJ determined that Claimant could perform the representative jobs of checker, cleaner/hospital, and laundry laborer, all of which exist in sufficient numbers in the national economy. (Tr. 31-32). Consequently, the ALJ found that Claimant had not been under a disability from January 9, 2001 through the date of the decision. (Tr. 32).

Claimant testified at the administrative hearing that he had trouble falling asleep, staying asleep, waking up when he needed to and resting when he does sleep. He claimed that it was getting worse over time. (Tr. 45). On average, Claimant stated that he gets eight to ten hours of actual sleep per night. He also stated that sleeps during the day "[a]round eight, eight to ten, twelve." In a 24-hour period, Claimant estimated he sleeps around ten to twelve hours. (Tr. 45-46).

After sleeping, Claimant stated that he wakes up "not feeling properly rested which causes [him] to sleep much longer the next night or not to be able to sleep at all the night prior and to be too tired to stay awake during the day." (Tr. 46). When he has difficulty sleeping, the next day he feels exhausted, irritable, "starving, almost," sore, irritated with a lack of energy and weakness then normal. Id. Claimant testified that his sleep problems caused him to be verbally irritable and "the most unreasonable human you could ever find," slamming doors and kicking chairs. (Tr. 47). These incidents happen every couple of days. He believes these incidents are exacerbated by the sleep issues. Id. He takes naps periodically but when they occur, they last for five hours. Id.

6

Claimant also states that, depending upon how much rest he has gotten, his memory is affected. He can have trouble remembering something 12 hours after the event has occurred or he can be told something and it just immediately is gone. Claimant testified that this happens multiple times every day. (Tr. 49).

In evaluating Claimant's subjective complaints, the ALJ summarized Claimant's testimony (Tr. 20) and concluded that "[Claimant] additionally described what appeared to be sleep difficulty; however, this does not appear to be sufficiently severe as to preclude work." (Tr. 30). The ALJ cited extensively from the medical record concerning Claimant's sleep problems. On September 27, 2021, Claimant underwent a sleep study. The results showed no sleep apnea, narcolepsy, or idiopathic hypersomnia. (Tr. 566, 569). He was counseled on appropriate sleep habits and sleep hygiene. He was advised not to operate heavy machinery or drive if he was sleepy. (Tr. 569). Claimant was also advised to consider other causes for subjective daytime fatigue/sleepiness/insomnia, such as sleep deprivation, medication effects, depression or hypothyroidism. (Tr. 566, 569). The ALJ also noted that Claimant was repeatedly found to be alert and oriented. (Tr. 22; Tr. 355, 363-64, 367, 378, 380-81, 384, 529,

533).

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims.  Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)).  The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character."  Soc. Sec. R. 16-3p at *1; *see also* Sonnenfeld v. Comm'r, Soc. Sec. Admin., 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis").  In place of "credibility," the Social Security Administration now utilizes the term "consistency."  Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and

8

limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; see also Sonnenfeld, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the consistency of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for

9

an adult . . . .

Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at *3. In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir.

2012) (citing <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987)). Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. <u>Keyes-Zachary</u>, 695 F.3d at 1166–67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." <u>Cowan v. Astrue</u>, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting <u>Kepler</u>, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Id</u>. (quoting <u>Kepler</u>, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. *See* Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision

must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Certainly, the level of Claimant's statements regarding the extent and effect of his sleeping problems are not consistent with the medical findings – particularly those made during the sleep study. Moreover, Claimant's activities are not consistent with his subjective statements of limitation. Namely, he feeds and walks the animals, bathes himself, intends on obtaining a driver's license, and helping out on the farm. He makes simple meals, reads, watches television, movies, videos and talks to people on the internet. Such activities are not consistent with Claimant's statements. This Court finds no error in the ALJ's Soc. Sec. R. 16-3p findings that Claimant's non-exertional sleep condition does

not impair Claimant's ability to engage in basic work activities.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 30th day of March, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE